UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| ROBERT ALLAN WEST,<br><br>Plaintiff,<br><br>vs.<br><br>GUSTAFSON, SGT. Jailer O.I.C. Minnihaha [sic] County Jail, individual capacity; and CHARGE NURSE M2013, RN Nurse M2013 Minnihaha [sic] County Jail, individual capacity,<br><br>Defendants. | 4:25-CV-04142-RAL<br><br><br>OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND 1915A SCREENING |

Plaintiff Robert Allan West filed a pro se prisoner civil rights lawsuit under 42 U.S.C. § 1983. Doc. 1. He filed a motion for leave to proceed in forma pauperis and provided a prisoner trust account report. Docs. 5, 6.

## I.    Motion for Leave to Proceed In Forma Pauperis

At the time West filed his complaint and motion to proceed in forma pauperis, he was an inmate at the Minnehaha County Jail. Docs. 1, 6. But before the Court ruled on West's motion for leave to proceed in forma pauperis, he was released from custody.[1]

Under the Prison Litigation Reform Act (PLRA), a prisoner who "brings a civil action or files an appeal in forma pauperis . . . shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). But circuit courts are split on whether the PLRA continues to apply after the

---

[1] West provided the Court with a notice of change of address providing that he is no longer incarcerated. See Doc. 7. West is not listed as an inmate on the inmate listing portal for the Minnehaha County Jail. See Who's Behind Bars, Minnehaha County Sheriff's Office, https://web.minnehahacounty.gov/dept/so/jailInmateInfo/jailInmateInfoSearchResults.php?g-recaptcha-response=&action=search&txtLastName=west&btnSearch=Search (last visited Feb. 23, 2026).

prisoner is released during litigation. See Carson v. Tulsa Police Dep't, 266 F. App'x 763, 766–67 (10th Cir. 2008) (describing split in authority); see also Domino v. Garland, No. 20-CV-2583, 2021 WL 1221188, at *1 (D. Minn. Apr. 1, 2021).

The United States Courts of Appeals for the Second, Fourth, and Sixth Circuits have held that, under the PLRA, "a prisoner is obligated to pay assessed fees and costs only while he or she remains incarcerated[,]" and "[a]fter release, the obligation to pay the remainder of the fees is to be determined solely on the question of whether the released individual qualifies for pauper status." In re Prison Litig. Reform Act, 105 F.3d 1131, 1139 (6th Cir. 1997); see also McGann v. Comm'r, Soc. Sec. Admin., 96 F.3d 28, 29–30 (2d Cir. 1996); DeBlasio v. Gilmore, 315 F.3d 396, 397 (4th Cir. 2003). By contrast, the Fifth, Seventh, and D.C. Circuits hold, based on the plain language of § 1915(b)(1), that a complainant must pay the full amount of the filing fee if the complainant was a prisoner when the action was commenced. See Gay v. Tex. Dep't of Corr. State Jail Div., 117 F.3d 240, 241–42 (5th Cir. 1997); Robbins v. Switzer, 104 F.3d 895, 897–99 (7th Cir. 1997); In re Smith, 114 F.3d 1247, 1251 (D.C. Cir. 1997).

The Eighth Circuit has not expressly weighed in on this issue but the court's holding in Tyler is instructive. See In re Tyler, 110 F.3d 528, 529–30 (8th Cir. 1997). There, the Eighth Circuit denied the plaintiff's motion to proceed in forma pauperis and refused to address the merits of the plaintiff's mandamus petition until the requisite financial obligations were met. Id. at 529–30. The Eighth Circuit explained that because the plaintiff had previously filed three actions dismissed as frivolous or for failure to state a claim, he was no longer eligible for a § 1915(b) installment plan. Id. at 529; see also 28 U.S.C. § 1915(g) (stating that a prisoner is not eligible for a reduced filing fee or an installment payment plan "if the prisoner has, on 3 or more prior occasions . . . brought an action . . . that was dismissed on the grounds that it is frivolous, malicious,

2

or fails to state a claim"). As such, the Eighth Circuit ordered the plaintiff to pay the filing fee in full, noting that "[e]ven if [plaintiff]'s petition is dismissed, [plaintiff] will still be assessed the full filing fee because the PLRA makes prisoners responsible for their filing fees the moment the prisoner brings a civil action or files an appeal." Tyler, 110 F.3d at 529–30.

Based on this language, courts within the Eighth Circuit have held that if a prisoner filed the action while in custody, they remain liable for the filing fee even if they are later released from custody. See Domino, 2021 WL 1221188, at *1 n.3 (stating that the "holding in Tyler that the fee obligation imposed by § 1915(b)(1) is triggered at the time the action is filed . . . is consistent with the conclusion that a complainant who filed an action when he was a prisoner remains liable for the filing fee if he is subsequently released from custody"); Counts v. Missouri, No. 4:24-CV-01437-MTS, 2025 WL 812276, at *3 (E.D. Mo. Mar. 13, 2025) (stating that, in light of the Eighth Circuit's decision in Tyler, the § 1983 plaintiff was "responsible for the entire [filing] fee because the full fee was assessed against him prior to his release from custody"); McFee v. Minnesota, No. 11–3614, 2012 WL 514708, at *3 nn.5–6 (D. Minn. Jan. 24, 2012), report and recommendation adopted, 2012 WL 512611 (D. Minn. Feb. 15, 2012) (recognizing that the plaintiff must pay the filing fee, despite having been released from custody before the court ruled on the motion for IFP); Williams v. Doe #1, No. 4:06CV1344, 2006 WL 3804027, at *1 n.1 (E.D. Mo. Nov. 7, 2006) (noting "§ 1915(b)(1) continue[d] to apply" despite litigant's release). But see Clark v. Wood, No. 4:20-CV-1215-JAR, 2021 WL 1873561, at *1 (E.D. Mo. May 10, 2021) (stating that if a plaintiff was released from custody before the court ruled on the IFP motion, the court will consider the motion under the non-prisoner standard in 28 U.S.C. § 1915(a)(1)).

3

The Eighth Circuit's holding in Tyler points to requiring West to pay the full filing fee. After all, West was an inmate when he filed this action, though he has been released from custody subsequently. See 28 U.S.C. § 1915(b)(1). This application of the PLRA is consistent with other cases in the District of South Dakota. See Hilston v. Lincoln Cnty. Cir. Judges, 782 F. Supp. 3d 712, 715–717 (D.S.D. 2025); Bell v. Bittinger, No. 4:24-CV-04152-LLP, 2025 WL 1424903, at *1–2 (D.S.D. May 16, 2025).

Under the PLRA, however, the Court may accept partial payment of the initial filing fee where appropriate. Thus, "[w]hen an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceedings or over a period of time under an installment plan." Henderson v. Norris, 129 F.3d 481, 483 (8th Cir. 1997) (alteration in original) (quoting McGore v. Wrigglesworth, 114 F.3d 601, 604 (6th Cir. 1997)).

The initial partial filing fee that accompanies an installment plan is calculated according to 28 U.S.C. § 1915(b)(1), which requires a payment of 20 percent of the greater of

(A) the average monthly deposits to the prisoner's account; or
(B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

West's certified prisoner trust account report shows an average monthly deposit of $22.50 and an average monthly balance of $0.15. Doc. 6 at 1. Because West would owe more than his current balance as his initial partial filing fee, the Court grants West leave to proceed in forma pauperis, Doc. 5, and waives his initial partial filing fee. See 28 U.S.C. § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action . . . for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.").

In order to pay his filing fee, West must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. § 1915(b)(2). The statute places the burden on the prisoner's institution to collect the additional monthly payments and forward them to the court as follows:

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

Id. The installments will be collected pursuant to this procedure. The Clerk of Court will send a copy of this order to the institution that previously housed West. West remains responsible for the entire $350 filing fee. See Tyler, 110 F.3d at 529–30.[2]

## II.    1915A Screening[3]

### A.    Factual Background as Alleged by West

After he filed his original complaint, Doc. 1, West filed a document titled "Motion [to] Ammend [sic] enclosed document into Inishal [sic] report as evidence[,]" Doc. 3. West states that he filed the motion to amend because the Minnehaha County Jail has "refused to supply the 8.5 x 11 inch paper to File the appropriate document[,]" and requests that the documents he attaches be "[a]mmend[ed] [sic] . . . into original complaint as evidence." Doc. 3 at 1, 2. Although West titled

---

[2] "As a practical matter, because [West] is no longer a prisoner as defined in 28 U.S.C. § 1915(h), the fee payment provisions of § 1915(b)(2) cannot be implemented at this time. Should [West] be a prisoner in the future, § 1915(b)(2) might then become applicable." Domino, 2021 WL 1221188, at *2 n.4; see also McFee, 2012 WL 514708, at *3 n.6 (stating that because the plaintiff was released, the fee payment provisions under § 1915(b)(2) cannot be utilized, but noting that if the plaintiff ever returns to custody by violating his terms of release or committing a new crime, § 1915(b)(2) will then become applicable).

[3] Because West filed this action while incarcerated, the Court conducts this screening pursuant to § 1915A. See Domino, 2021 WL 1221188, at *1. But even if West's petition was not subject to a § 1915A screening, the Court's analysis would be the same under 28 U.S.C. § 1915(e). See id. at *1 n.2.

5

this filing as a motion to amend, it appears that he intended only to submit additional documents, not to file an amended complaint. His motion to amend attaches 12 pages of medical grievance forms. Doc. 3-1. West does not appear to be asserting any new claims and names no additional or different defendants. West is not making any of the types of amendments contemplated by Federal Rule of Civil Procedure 15(a), which allows for amended pleadings. See 6 Wright & Miller's Federal Practice & Procedure § 1474 (3d ed. 2025) (discussing common purposes of an amended complaint, such as stating additional claims or defenses, increasing the amount of damages sought, or adding or substituting parties to the action). Giving West's filings a liberal construction, this Court denies his motion to amend, Doc. 3, as moot, but will consider the attachments to the motion to amend as a sort of supplement or as if an attachment to his complaint.[4] In considering whether West has stated a claim upon which relief may be granted, the Court may look to "documents necessarily embraced by the complaint[,]" Zean v. Fairview Health Servs., 858 F.3d 520, 526 (8th Cir. 2017) (citing Enervations, Inc. v. Minn. Min. & Mfg. Co., 380 F.3d 1066, 1069 (8th Cir. 2004)), which includes West's additional filing.

West's complaint arises out of events occurring at the Minnehaha County Jail as he was awaiting sentencing. See Doc. 1 at 4, 11. West alleges that on December 27, 2024, he suffered multiple injuries after the Sioux Falls Police Department attacked him.[5] Id. at 4. According to

---

[4] This Court declines to construe West's filing as a motion to supplement his complaint. Federal Rule of Civil Procedure 15(d) allows a party to supplement a pleading "setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). Unlike an amended pleading, which adds matters overlooked or unknown to a party when filing, "[a] supplemental pleading . . . is designed to cover matters subsequently occurring but pertaining to the original cause." United States v. Vorachek, 563 F.2d 884, 886 (8th Cir. 1977) (per curiam) (internal quotation omitted) (collecting cases). Here, however, the primary purpose of West's filing appears to be to include additional documents to be considered at screening. See Docs. 3, 3-1.

[5] Throughout his complaint, West makes multiple references to the Sioux Falls Police Department ("SFPD") and describes the injuries allegedly inflicted by SFPD. See, e.g., Doc. 1 at

6

West, he was then brought to the Minnehaha County Jail, where he asked to be taken to the hospital for the pain he was experiencing in his wrist and the left side of his back. Id. at 5. West alleges that his injuries included a fractured wrist, three broken ribs, and lacerations on his face. Id. West was seen by a nurse at the Minnehaha County Jail, who asked West to move his fingers, and when he was able to do so, informed West that he did not have a broken wrist. Id. West alleges that he was crying due to the pain, and was told by the nurse "to grow up and act [his] age." Id. (capitalization in original omitted). West was then taken to a holding cell, where he "continued to hit the emergency button cuz [his] pain was so bad" that he urinated upon himself. Id. (capitalization in original omitted). West alleges that he "begg[ed]" staff to take him to the hospital, and that "staff continued to tell [him] to grow up[.]" Id. (capitalization in original omitted).

Around 1:00 a.m. on December 28, 2024, West was moved to a transitional holding block and again asked to be taken to the hospital. Id. at 5–6. West also requested that he be moved to a cell with an unoccupied bottom bunk, because the bottom bunk in his cell was occupied, and he was unable to jump up to the top bunk due to his pain and injuries. Id. at 6. West alleges that he was told to sleep on the floor, and that he "woke up in a soiled bed due to [his] ribbs [sic] being broke [and because he] couldn't control [his] pee." Id. (capitalization in original omitted).

On the afternoon of December 28, 2024, West asked again to be brought to the hospital, and his request was denied. Id. at 6. Instead, he was seen by a nurse, who informed him that a

---

4 ("S.F.P.D. attacted [sic] me and broke my ribbs [sic] and wrist and smashed my face in to concrete." (capitalization in original omitted)). In the section of the complaint instructing West to state the facts underlying his claims, he states that SFPD attacked him and used excessive force when arresting him, as well as failed to identify themselves as law enforcement. Id. at 10. But neither SFPD nor any of its employees are named as defendants in West's complaint. See generally id.

7

mobile X-ray lab was visiting the jail. Id. It is not clear from West's complaint whether he received an X-ray from the mobile lab, because he alleges that he was taken to Avera McKennan Hospital ("Avera"). Id. at 6–7. When he was brought to Avera, West alleges that he was crying due to the pain yet was told by CO Winters[6] to grow up and act his age. Id. at 7. West did receive X-rays at Avera, which West alleges "clearly showed [he] had a broken wrist, fractured." Id. (capitalization in original omitted). West alleges that he was "treated wrong" at Avera, but does not provide any further context to support or explain this assertion. Id. (capitalization in original omitted). West was brought back to the Minnehaha County Jail, where he was again "told to sleep on the floor and continued to urinate the bed." Id. (capitalization in original omitted).

West alleges that he asked to have his ribs checked, but was told, presumably by jail staff, that "they could do nothing to help [him]." Id. (capitalization in original omitted). West informed Sergeant Gustafson that he "needed to go back to the hospital to have more tests done due to blood in [his] stool and savere [sic] pain in [his] back and stomach." Id. (capitalization in original omitted). West continued to ask jail staff if he could return to the hospital, and when those requests continued to be denied, West claims that on December 29, 2024, he "thought [he] was gonna die." Id. at 7–8 (capitalization in original omitted). West continued to be denied access to a bottom bunk, and "couldn't get up off the floor." Id. at 8 (capitalization in original omitted).

On December 29, 2024, West was "brought to the bone surgeon from McKennan[.]" Id. (capitalization in original omitted). Upon visiting the surgeon, he was placed in a cast and scheduled for a follow-up appointment in two weeks. Id. According to West, "later the surgeon took new X-rays wich [sic] showed a ne [sic] crack in [his] wrist." Id. at 8–9 (capitalization in original omitted). West was then put in another cast for two weeks, and alleges that the X-rays he

---

[6] "CO Winters" is not named as a defendant in West's complaint. See Doc. 1.

8

received "showed that [his wrist] was healing[.]" Id. (capitalization in original omitted). West's cast was then removed, and he was placed in a brace. Id.

In his supplemental filing, West includes medical grievances[7] he filed while at the Minnehaha County Jail from the period of January 11, 2025, to February 27, 2025. Doc. 3-1 at 1–12. In a grievance dated January 11, 2025, West states "I am requesting to please go get a x-ray or EKG I'll pay for the bill I'm scared it hurts[.]" Id. at 1. This grievance was viewed by Corporal Gustafson on the same day it was filed by West. Id. On January 27, 2025, West filed another grievance stating, "[w]hen I was arrested and brought to the jail[,] I wasn't given proper medical treatment by the jail for my face and broken wrist and arm sustained by the SFPD." Id. at 2. This grievance was viewed by Corporal C. DeGroot[8] on the same day it was filed by West. Id. at 3. On January 28, 2025, West filed another grievance providing "I still haven't been took [sic] to the hospital for my ribbs [sic] and my damage internally which I still am having problems with[.]" Id. at 5. On January 28, 2025, West filed a grievance requesting Tylenol and ibuprofen because his pain was "at an 8" due to his broken wrist, arm, and ribs. Id. at 6. West responded to his own grievance on January 29, 2025, stating "I guess I'll just talk to my Doctor at my upcoming appointment[.]" Id. On February 27, 2025, West filed a grievance requesting an increase in his dosage of hydroxyzine due to anxiety and depression. Id. at 11. A charge nurse responded to West's grievance, stating "[i]t appears you sent a message to mental health and they are aware of your request. . . . mental health is currently following your request." Id.

---

[7] West also filed grievances requesting identifying information for the nurse that treated him on December 27, 2024, as well as the name of the medical supervisor working on that same day. Id. at 8, 10.

[8] Corporal DeGroot is not named as a defendant in West's complaint. See Doc. 1.

9

West claims that he was told by a Minnehaha County Correctional Officer to file a § 1983 suit "for cruel and unusual punishment and pain and anguish." Doc. 1 at 9 (capitalization in original omitted). West brings claims for "cruel and unusual punishment, medical malpractice, diliberat [sic] indifference, pain and anguish" because "medical staff and Sergeant Gustafson failed to take [him] to hospital for 2 days after S.F.P.D. injury inflicted on 12-27-24[.]" Id. at 3, 4 (capitalization in original omitted). West sues Sergeant Gustafson, a jailer at the Minnehaha County Jail, and Charge Nurse M2013, a nurse at the Minnehaha County Jail. Id. at 2. West sues both defendants in their individual capacities only and seeks $300,000 from each defendant. Doc. 1 at 2, 10.

### B.    Legal Standard

A court must assume as true all facts well pleaded in the complaint when screening under 28 U.S.C. § 1915A. Est. of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); see also Ellis v. City of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam). Civil rights complaints cannot be merely conclusory. Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); Parker v. Porter, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). If it does not contain these bare essentials, dismissal is appropriate. Beavers v. Lockhart, 755 F.2d 657, 663 (8th Cir. 1985).

10

Twombly requires that a complaint's factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" Twombly, 550 U.S. at 555 (citations omitted); see also Abdullah v. Minnesota, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting complaint must contain either direct or inferential allegations regarding all material elements necessary to sustain recovery under some viable legal theory (citation omitted)). Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). This Court now screens West's claims under 28 U.S.C. § 1915A.

### C.    Legal Analysis

#### 1.    § 1983 Claims for Deliberate Indifference to Medical Needs

West sues both defendants in their individual capacities and requests monetary relief. Doc. 1 at 2, 10. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

> Thus, each Government official . . . is only liable for his or her own misconduct. As we have held, a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.

Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010) (cleaned up). In other words, West's individual capacity claims must allege that each individual defendant either directly participated in the unconstitutional conduct or caused the conduct to occur through a failure to train or supervise the offending actor. See id.

11

Based on the defendants' failure to take him to the hospital for two days, West alleges claims for "cruel and unusual punishment, medical malpractice, diliberat [sic] indiference [sic], [and] pain and anguish." Doc. 1 at 3–4. Liberally construing his complaint, West states a deliberate indifference to serious medical needs claim. Because West alleges that he was an "inmat [sic] awaiting sentencing" at the time the conduct alleged in his complaint occurred, see Doc. 1 at 4, his claims for inadequate medical care fall under the Fourteenth Amendment's due process protections, rather than the Eighth Amendment. Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam). But because the Eighth Circuit has not established a different standard for this analysis, West's deliberate indifference claims under the Fourteenth Amendment are analyzed under the same deliberate indifference standard as Eighth Amendment claims by convicted inmates. Id. at 152–53.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id. at 104–05 (footnotes omitted). "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Id. at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106. Allegations of negligence will not suffice, nor will mere disagreement with treatment decisions. Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000) (citing Est. of Rosenberg, 56 F.3d at 37).

12

The deliberate indifference standard includes both an objective and subjective component. Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997)). The plaintiff "must demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." Id. (citing Coleman, 114 F.3d at 784). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" Coleman, 114 F.3d at 784 (quoting Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995)). To be liable for deliberately disregarding medical needs, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

### a.     Defendant Gustafson

West alleges sufficient facts to state a claim for deliberate indifference to serious medical needs against Defendant Gustafson under the Fourteenth Amendment. Accepting as true all of the factual allegations alleged in the complaint, Sergeant Gustafson was aware of West's multiple requests to be taken to the hospital. See generally Doc. 1. West alleges that he was in so much pain that he soiled himself, see id. at 6, and that he told Sergeant Gustafson that he "needed to go back to the hospital to have more tests done due to blood in [his] stool and savere [sic] pain in [his] back and stomach[,]" id. at 7. Both of these incidents would alert a layperson to the necessity of medical attention, demonstrating the objective prong. As for the subjective prong, West alleges that Sergeant Gustafson was aware of these incidents but disregarded his needs. See generally id. Although some of his claims may be considered allegations of negligence, this Court cannot conclude at this stage that West's claims are wholly without merit. At this stage of the proceeding,

13

West has pled a plausible Fourteenth Amendment deliberate indifference to medical needs claim against Sergeant Gustafson, and West's individual capacity claim against Sergeant Gustafson for money damages survives § 1915A screening.

### b.  Defendant Charge Nurse M2013

Unlike West's claims against Sergeant Gustafson, which arise from a series of incidents of which Gustafson was aware, West's deliberate indifference claims against Nurse M2013 are limited to two interactions West had with her. West was first examined by Nurse M2013 on December 27, 2025, when she determined that his wrist was not broken because he was able to move his fingers. Doc. 1 at 5. The second interaction[9] occurred on December 28, 2024, when Nurse M2013 informed West that a mobile X-ray lab was coming to the Minnehaha County Jail. Id. at 6. While it is not clear from his complaint whether the mobile lab did indeed visit the Jail, West states that he was taken to Avera where he received an X-ray and it was determined that he had a broken wrist. Id. at 6–7.

Liberally construing West's complaint, he is asserting a Fourteenth Amendment deliberate indifference to serious medical needs claim based on Nurse M2013's alleged medical malpractice. See Doc. 1 at 3 (providing that West states claims for "cruel and unusual punishment, medical malpractice, diliberat [sic] indiference [sic], [and] pain and anguish."). "Medical malpractice alone, however, is not actionable under the Eighth Amendment[,]" and "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." Popoalii v. Corr. Med. Servs., 512 F.3d 488, 499 (8th Cir. 2008) (citation modified). "[I]n cases where some medical care is

---

[9] It is not clear from West's complaint whether Nurse M2013 was the nurse he saw on December 28, 2024. See Doc. 1 at 5–6. However, construing his complaint liberally, this Court assumes for the purpose of screening that West saw Nurse M2013 on both occasions.

14

provided, a plaintiff is entitled to prove his [Eighth Amendment] case by establishing [the] course of treatment, or lack thereof, so deviated from professional standards that it amounted to deliberate indifference." Allard v. Baldwin, 779 F.3d 768, 772 (8th Cir. 2015) (alterations in original) (quotation omitted). "Deliberate indifference entails a level of culpability equal to the criminal law definition of recklessness[.]" McRaven v. Sanders, 577 F.3d 974, 982 (8th Cir. 2009) (quotation omitted).

Here, West makes no allegations that Nurse M2013's actions were equivalent to criminal recklessness. West's allegations, at most, show that Nurse M2013 was negligent in failing to diagnose and properly treat his broken wrist. But "a complaint that a physician[10] has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Estelle, 429 U.S. at 106. Therefore, West's Fourteenth Amendment deliberate indifference claim against Nurse M2013 is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 2.    State-Law Medical Malpractice Claims

Liberally construing his complaint, West also alleges a state-law claim for medical malpractice. See Doc. 1 at 3. Under 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over all other claims that "form part of the same case or controversy" as the civil action over which this court has original jurisdiction. Because West's claims against Sergeant Gustafson survive

---

[10] The United States Court of Appeals for the Eighth Circuit has held that the same principles that apply to physicians "govern Eighth Amendment claims against prison nurses assigned the pre-diagnosis tasks of assessing an inmate's injury, developing a treatment plan, and consulting with or referring the inmate to a physician when appropriate." Cannon v. Dehner, 112 F.4th 580, 587 (8th Cir. 2024).

15

§ 1915A screening, this Court has supplemental jurisdiction over West's state-law medical malpractice claims.

"[H]ealthcare providers have a duty under state law to provide care and treatment that complies with the applicable standard of care." Hunter v. Haas, 4:24-CV-04170-CCT, 2025 WL 2830261, at *5 (D.S.D. Oct. 6, 2025). "In order to prevail in a suit based on negligence, a plaintiff must prove duty, breach of that duty, proximate and factual causation, and actual injury." Hanson v. Big Stone Therapies, Inc., 916 N.W.2d 151, 158 (S.D. 2018) (quoting Hamilton v. Sommers, 855 N.W.2d 855, 861 (S.D. 2014)). "In a suit for professional negligence, the plaintiff must prove that the professional deviated from the required standard of care." Id. (citing Magbuhat v. Kovarik, 382 N.W.2d 43, 46 (S.D. 1986)).

West alleges facts sufficient to state a claim for medical malpractice under South Dakota state law. He alleges that Nurse M2013 provided him with medical care and owed him a duty, that she failed to provide medical care and breached that duty, and that he has suffered harm as a result of this breach. See Doc. 1 at 5–9; see also Ward v. U.S. Marshals, 5:23-CV-05061-CCT, 2025 WL 949242, at *35 (D.S.D. Mar. 28, 2025) (finding that allegations that treatment was "beyond negligent" were sufficient for state-law medical malpractice claims against a nurse to survive § 1915A screening). Thus, West's state-law medical malpractice claim against Nurse M2013 survives § 1915A screening.

## III.    Conclusion

Accordingly, it is

ORDERED that West's motion for leave to proceed in forma pauperis, Doc. 5, is granted. The Clerk of Court will send a copy of this order to the appropriate financial official at the institution that previously housed West. It is further

16

ORDERED that West's motion to amend, Doc. 3, is denied as moot. It is further

ORDERED that West's individual capacity claim against Sergeant Gustafson for money damages survives § 1915A screening. It is further

ORDERED that West's deliberate indifference claims against Nurse M2013 are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that West's state-law medical malpractice claim against Nurse M2013 survives § 1915A screening. It is further

ORDERED the Clerk shall send two blank summons forms and Marshal Service Forms (Form USM-285) to West so that he may cause the complaint to be served upon Sergeant Gustafson and Nurse M2013. It is further

ORDERED that West shall complete and send the Clerk of Courts summonses and USM-285 forms for both Sergeant Gustafson and Nurse M2013. Upon receipt of the completed summonses and USM-285 forms, the Clerk of Court will issue the summonses. If the completed summonses and USM-285 forms are not submitted as directed within 30 days of the date of this order, the action may be dismissed for failure to prosecute. It is further

ORDERED that the United States Marshal Service shall serve the completed summonses, together with a copy of the complaint, Doc. 1, and this order, upon the defendants. It is further

ORDERED that the defendants will serve and file an answer or responsive pleading to the complaint on or before 21 days following the date of service or 60 days if the defendant falls under Fed. R. Civ. P. 12(a)(2) or (3). It is finally

17

ORDERED that West will keep the Court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the Court's Local Rules while this case is pending.

DATED March 25th, 2026.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE

18